HILLARY M. CARPENTER AND VIOLET L. CARPENTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carpenter v. Commissioner
Docket No. 10595-78.
United States Tax Court
T.C. Memo 1981-551; 1981 Tax Ct. Memo LEXIS 191; 42 T.C.M. (CCH) 1227; T.C.M. (RIA) 81551; September 28, 1981. Hillary M. Carpenter, pro se. Marshall W. Taylor, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in income tax against petitioners in the amount of $ 4,191. The issues for decision are whether petitioners are entitled to a loss deduction of $ 7,000 and whether they are entitled to deductions for certain charitable contributions. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and *192 attached exhibit are incorporated by reference. The petitioners resided in Las Vegas, Nevada, when they filed their petition in this case. They filed a joint Federal income tax return for the taxable year 1975 with the Internal Revenue Service Center at Fresno, California. Mr. Carpenter will hereinafter be referred to as petitioner. In 1976 petitioner retired from 34 years of service with the Federal government. During 1975 petitioner advanced $ 7,000 to his son-in-law in varying increments, not exceeding $ 500 each, to acquire all of the inventory of a retail electronics business. His son-in-law made all of the arrangements for the acquisition from the seller. Petitioner and his son-in-law intended to be equal partners in the electronics business as his son-in-law had sales experience. The son-in-law had no money to contribute to the partnership. The funds which petitioner advanced to his son-in-law came from cash savings accumulated over a long period of time. Petitioner maintained a small checking account for paying utility bills but he primarily operated with cash by cashing his paychecks and making most expenditures in cash. Prior to the time that petitioner *193 and his son-in-law were to receive delivery of the electronics inventory, his son-in-law was arrested on a parole violation charge and transported to the State of Wisconsin where he was held for several months. During this absence, petitioner attempted to effect delivery of the inventory but the man from whom his son-in-law was acquiring the inventory refused to deal with petitioner. The son-in-law returned late in 1975 only to discover that the inventory and seller were both gone from the location where they had been located when he negotiated with them. The son-in-law was unable to locate the seller or the inventory. Petitioner recorded the advances to his son-in-law in a diary covering the years 1973, 1974 and 1975. During 1975 petitioner attended services at the Church of Religious Science, Church of Divine Science and Theosophical Society at which times he made cash contributions. He made entries in his diary for each of these contributions as well as for cash contributed to the Arthritis Foundation, the American Heart Association and American Cancer Society. Petitioners' contributions exceeded the ten percent tithe. Some time between April 15, 1976, and June 13, 1978, petitioners *194 moved their residence from Hawthorne, California, to Las Vegas, Nevada. During the move, petitioners lost all of their business records dating back to 1945, including petitioner's diary for the years 1973, 1974 and 1975, and their retained copy of their 1975 Federal income tax return. Petitioners' Federal income tax return for the taxable year 1975 was prepared by Al Groves, a friend of petitioners, who was a retired lieutenant colonel in the military reserve. He prepared the return from petitioner's diary. During the examination of the return by the Internal Revenue Service petitioner admitted that his records were lost and he offered to secure a statement from Al Groves concerning the preparation of the return and verification that it was prepared from petitioner's diary. The examining officer from the Internal Revenue Service refused to accept any such statement; therefore, petitioner made no attempt to secure it at that time. Petitioner later attempted to learn the whereabouts of Al Groves in order to secure his testimony in this proceeding only to discover that he had died unexpectedly of a heart attack. On their joint Federal income tax return for the taxable year 1975, *195 petitioners claimed the following charitable contributions: Church of Religious Science
$ 1,500
Church of Divine Science
1,250
Gil Boyne Institute
235
Theosophical Society
500
Arthritis Foundation
100
American Heart Association
50
American Cancer Society
50
$ 3,685
They claimed miscellaneous deductions of $ 7,000 for "Business Failure (Electronics)" and $ 3,000 gifts per child to two children. The Commissioner, in his statutory notice of deficiency, disallowed all of the deductions described above. Petitioners concede the correctness of the disallowance of deductions claimed for gifts to their children. Respondent concedes that all of the organizations to which petitioners claimed to have made contributions qualified under section 170(c) of the Code [1] except the Gil Boyne Institute. ULTIMATE FINDINGS OF FACT Petitioner contributed cash to the following organizations in the respective amounts: Church of Religious Science
$ 1,500
Church of Divine Science
1,250
Gil Boyne Institute
235
Theosophical Society
500
Arthritis Foundation
100
American Heart Association
50
American Cancer Society
50
$ 3,685
*196 Petitioner, during 1975, advanced $ 7,000 to his son-in-law as contributions to a partnership in which each would have a 50 percent interest in buying and selling electronic equipment. The $ 7,000 was expended to acquire an inventory of electronic equipment but before it was reduced to the partners' possession the seller moved the equipment and neither the seller nor the inventory could be located. By December 31, 1975, it was apparent to petitioner that there could be no recovery of the $ 7,000 advance. OPINION The issues in this case are simple and need not be repeated here. Their resolution turns primarily upon the credibility of petitioner's testimony. Immediately after the conclusion of the trial we commented upon the evidence while it was fresh in our memory. We unequivocally stated that we believed the testimony of petitioners. We continue to do so despite the statements made in respondent's brief. We do not share the suspicions of counsel for respondent and have found facts which demonstrate that petitioners have, for the most part, sustained their burden of proof. Our observations of petitioners at trial were that they were forthright, open, and honest and *197 that they tried to recall the facts to the best of their ability. Nothing in respondent's brief shakes our confidence in petitioners' veracity. We do not condone a taxpayer's practice in dealing in cash nor do we condone a taxpayer's failure to maintain adequate books and records or losing books and records. But here, we believe that petitioner did maintain records and that they were lost and the witness who could verify their existence is dead. The issues in this case are factual. The cases relied upon by respondent are factually different; therefore, resolution of the issues is dependent upon the evidence adduced at the trial of this case. Petitioners have established that petitioner and his son-in-law intended to enter the retail electronics business as a partnership and that petitioner advanced to his son-in-law $ 7,000 to acquire the inventory. It was the agreement of petitioner and his son-in-law that they would share profits and losses equally. It is clear from the record that the loss sustained by the partnership was inherently related to its trade or business, i.e., the acquisition of its inventory. This loss became apparent by the end of 1975 when the son-in-law *198 returned from Wisconsin and was unable to locate the seller or the inventory. Petitioner and his son-in-law were equal partners and the only transaction of the partnership during 1975 was the loss of $ 7,000. Accordingly, petitioner is entitled to deduct his share of the loss sustained by the partnership, i.e., $ 3,500. See sec. 704(d). All of the organizations to which charitable contributions were made by petitioners in 1975 qualified under section 170(c) of the Code except Gil Boyne Institute. Petitioners have established to our satisfaction that they contributed all of the amounts they claimed on their return. Accordingly, the charitable contributions are allowable as deductions to the extent of $ 3,450. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended.↩